

Filed
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## IN THE MATTER OF THE GUARDIANSHIP OF YUK LAN MOYLAN,
Ward.

### RICHARD E. MOYLAN,
Appellant/Cross-Appellee,

**v.**

### LINA LEIALOHA MOYLAN ALSTON,
Appellee/Cross-Appellant.

Supreme Court Case No.: CVA21-009
Superior Court Case No.: SP0106-07
(consolidated with SP0104-07, SP0105-07,
SP0107-07, SP0110-07, and SP0111-07)

## OPINION

**Cite as: 2022 Guam 10**

Appeal from the Superior Court of Guam
Argued and submitted on August 12, 2022
Via Zoom video conference

**E-Received**
12/13/2022 12:33:13 PM

Appearing for Appellant/Cross-Appellee:
Gary Wayne Francis Gumataotao, *Esq.*
Law Offices of Gumataotao & Pole, P.C.
456 W. O'Brien Dr., Ste. 104
Hagåtña, GU 96910

Douglas B. Moylan, *Esq.*
Skinner Plaza Bldg.
138 W. Seaton Blvd., Ste. 201
Hagåtña, GU 96910

Appearing for Appellee/Cross-Appellant:
Jacqueline Taitano Terlaje, *Esq.*
Law Office of Jacqueline Taitano Terlaje, P.C.
284 W. Chalan Santo Papa
Hagåtña, GU 96910

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

[1]      Appellant/Cross-Appellee Richard E. Moylan ("Richard") appeals a Decision and Order implementing this court's mandate in *In re Guardianship of Moylan*, 2018 Guam 8, as well as the denial of a Motion for Reconsideration on the same.  He urges that a newly assigned Superior Court judge fundamentally misunderstood what the previously assigned judge ordered, what he provided, and inaccurately calculated attorney's fees.  Richard requests a remand so that the newly assigned judge may request and receive information as she would like it.  We are not persuaded that the Superior Court's Decision and Order reflects a fundamental misunderstanding or that the court abused its discretion.

[2]      Appellee/Cross-Appellant Lina Leialoha Moylan Alston ("Lina") cross-appeals the same Decision and Order, urging that although the newly assigned judge properly understood the issues, she awarded Richard attorney's fees at an hourly rate greater than the billed rate, constituting unjust enrichment in violation of the substantial benefit doctrine.  She also urges that although a lodestar figure is presumptively reasonable, in this case it was rebutted by a billable rate, and so application was erroneous.  Again: we are not persuaded that the Superior Court's award was unreasonable or that it abused its discretion.

[3]      We affirm the Superior Court's Decision and Order and denial of the motion for reconsideration.

[4]      Lina also urges that certain documents submitted in Richard's Excerpts of Record were not part of the record on appeal and should be stricken.  We agree, but sanctions will not be imposed. Finally, Richard argues that Lina should pay for the transcripts of a March 10, 2021 hearing, and

he requests his costs in pursuing that argument. Because the transcript is key to understanding arguments made by both sides, the parties will evenly split the cost of the transcripts, but each side will bear its own legal fees and costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[5]     This appeal arises from the implementation of this court's mandate in *In re Guardianship of Moylan*, 2018 Guam 8 ("*Moylan III*"). The case concerns the highly contested guardianship of Mr. Francis Lester Moylan and Mrs. Yuk Lan Moylan (collectively, the "Wards"), both of whom are now deceased. *See In re Guardianships of Moylan*, 2011 Guam 16 ¶ 1 n.1 ("*Moylan I*") (indicating the passing of Mr. Moylan); Notice of Suggestion of Death (Nov. 22, 2021) (indicating the passing of Mrs. Moylan).

[6]     Collectively, this court has issued the following opinions related to this case: *In re Guardianships of Moylan*, 2011 Guam 16 ("*Moylan I*"); *In re Guardianship of Moylan*, 2017 Guam 28 ("*Moylan II*"); *In re Guardianship of Moylan*, 2018 Guam 8 ("*Moylan III*"); *In re Guardianship of Moylan*, 2018 Guam 15 ("*Moylan IV*"); *In re Guardianship of Moylan*, 2018 Guam 21 ("*Moylan V*"); and *In re Guardianship of Moylan*, 2021 Guam 15 ("*Moylan VI*").

[7]     A summary of the factual and procedural background from *Moylan III*, the case most relevant to this appeal, is copied below.

> As noted in the court's prior opinions in this case, Mrs. Yuk Lan Moylan ("Mrs. Moylan") and Mr. Francis Lester Moylan ("Mr. Moylan") (collectively, the "Wards") were successful businesspeople who amassed a large set of assets. In 2007, each was diagnosed with varying stages of Alzheimer's disease, which limited their ability to care for themselves and their assets. Mr. and Mrs. Moylan had four children, including Richard and Appellees Kurt Moylan ("Kurt"), Leialoha Moylan Alston ("Princess")[1], and Francis Lester Moylan, Jr. ("JR") (Kurt, Princess, and JR collectively, the "Majority Siblings").
>
> Faced with competing petitions to be appointed guardian of the Wards, the trial court appointed Princess "general guardian" over the person of Mr. Moylan

---

[1] Note that in this Opinion, we refer to this individual as "Lina."

and "limited guardian" over the person of Mrs. Moylan. Kurt was appointed "general guardian" of the estate of Mr. Moylan and "limited guardian" of the estate of Mrs. Moylan. We affirmed these appointments on appeal in *Moylan I*.

During the course of this guardianship litigation, Richard alleged that his siblings orchestrated a scheme to put more than $1.5 million worth of Time Certificates of Deposit ("TCDs") that belonged to the Wards into the names of Princess and JR. Following the eleven-day evidentiary hearing, the court ordered that "[a]ll sums originally transferred into the names of Princess and JR shall be transferred as soon as is practicable back to the names of the Wards." The trial court, however, did not require reimbursement of interest on the TCDs from Princess and JR to the Wards. Subsequently, the court issued another order requiring "Guardian Kurt S. Moylan . . . to remove the names of [Princess] and [JR] from any and all" of the TCDs, which had been placed into a joint account over which Princess and JR continued to maintain co-ownership following the court's November 2008 decision.

Among other issues, Richard appealed that portion of the trial court's findings that Princess and JR were not required to reimburse the Wards for interest on the TCDs while they were in Princess's and JR's names. We found this issue moot. *See Moylan I*, 2011 Guam 16 ¶ 45. Nevertheless, we noted that in resolving this issue below, the trial court "did not base this conclusion on any prior bad act on the behalf of any of the Majority Siblings" and "found no ill will or deceitful motives on the part of" any of the Majority Siblings. *Id.* ¶ 20 (citations and internal quotation marks omitted). Thus, we observed that "the imposition of a constructive trust by the trial court was not based on any finding of prior bad acts and was not necessarily inconsistent with the appointment of Kurt and Princess as guardians." *Id.*

Separately, the Majority Siblings cross-appealed from the trial court's order imposing a constructive trust on the TCD transfers. We affirmed this order, finding that Princess and JR would be unjustly enriched were a constructive trust not imposed. We further stated that "[t]he act of restoring the property to the rightful owner, as was done in this case, both restored the property back to the Wards and prevented any future unjust enrichment." *Id.* ¶ 70 n.12.

Richard filed a motion for attorney's fees, which asserted that his role in the litigation helped to protect estate assets properly belonging to the Wards. Princess and Kurt, as court-appointed guardians of the Wards, opposed this motion.

The trial court denied Richard's motion in its entirety. In doing so, the trial court reasoned that Guam's guardianship statutes permit only the guardian to apply for attorney's fees. The court also found that Richard's actions did not rise "to the level of 'protection' needed to invoke the equitable circumstances exception" because there was "no evidence of bad faith or egregiousness by the guardians to

warrant protection." Therefore, no equitable circumstances existed to warrant the grant of attorney's fees. Richard filed a timely appeal of this final order.

*Moylan III*, 2018 Guam 8 ¶¶ 2-8 (alterations in original) (footnote and internal record citations omitted).

[8]     This court reversed. Richard had no right to recover his attorney's fees under any statutory provision, but this court held that the "substantial benefit" exception to the American Rule applies in Guam and may be used in guardianship proceedings. *Id.* ¶¶ 23, 29. After explaining when the substantial benefit doctrine applies, the court in *Moylan III* said:

> Here, Richard has undoubtedly conferred a "substantial benefit" on the Wards through his litigation efforts that resulted in more than $1.5 million in TCDs being returned to the Wards. Title to these funds was originally taken out of the Wards'' names, but ultimately returned through Richard's efforts. The Wards are clearly identifiable and plainly benefited from having misappropriated funds returned to their name. *Cf. Moylan I*, 2011 Guam 16 ¶¶ 69-70 (finding that transferring TCDs to anyone other than the Wards would result in unjust enrichment). The reasonable attorney's fees expended by Richard in his effort to have the TCDs returned (as opposed to the fees Richard incurred undertaking other aspects of his petition) are therefore properly shifted to the Wards. On remand, the trial court should calculate the amount that Richard is entitled to in the first instance.
>
> In addition to his efforts regarding the return of the TCDs to the Wards, Richard has also requested attorney's fees for his efforts: (i) in maintaining title in the name of the Wards to the residence where Princess currently resides; and (ii) in recovering shareholder loans payable to the Wards. Both of these issues were addressed in our prior opinion in *Moylan I*. *See Moylan I*, 2011 Guam 16 ¶¶ 34-40, 56-59. At the time that Richard filed his motion for attorney's fees in the Superior Court, however, these issues were not ripe for determination because they were not subject to final resolution. *See generally People v. Gay*, 2007 Guam 11 ¶ 8 (The court will "decline to hear . . . question[s]" where issuing an order and mandate "would exceed prudential limits imposed by the ripeness doctrine."). Indeed, both issues were the subject of Richard's appeal filed in *Moylan II*, 2017 Guam 28. For this reason, we vacate the trial court's order to the extent that it resolved Richard's claim of attorney's fees with respect to the transfer of real property to Princess or loans owing to the Wards and remand with instructions to either: (i) dismiss that portion of Richard's motion without prejudice; or (ii) upon final resolution of those issues, determine whether Richard is entitled to attorney's fees in accordance with the legal principles set forth above. *See Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1161-63 (10th Cir. 2007).

*Id.* ¶¶ 31-32 (internal record citations omitted).

[9]     On remand, the issue remained contentious. During a hearing before the Superior Court in June 2019, Richard was instructed on how to submit his requests and what to include. In December 2019, Richard submitted his brief on fees together with a declaration by counsel. He sought attorney's fees and costs for his work on five issues: recovery of the TCDs, recovery of the house, defense of a former judge's determination that the Wards were entitled to recovery of a loan, protection of the Wards' civil liberties, and legal work related to recovering compensable fees and costs. Lina filed an opposition, and Richard replied.

[10]    Multiple stipulations for extension of time were filed, and while the issue was pending, the case was re-assigned to another Superior Court judge. In March 2021, the new judge held a motion hearing regarding attorney's fees, and to help the court calculate the attorney's fee award, the judge ordered Richard to submit a digital copy of the spreadsheet attached to a previously filed declaration of counsel. Richard complied.

[11]    On June 15, 2021, the judge issued a Decision and Order ("June 2021 Decision") on attorney's fees. Acknowledging that Richard sought to recover fees on five issues, the court "decline[d] to consider" his arguments on the Wards' civil liberties and legal work on his efforts to recover compensable fees and costs because he "fail[ed] to present the Court with a legal argument regarding the award of fees for the issues." Record on Appeal ("RA"), tab 731C at 3-4 (Dec. & Order, June 15, 2021). The court also noted that his efforts to recover fees and costs "also falls outside the scope of the *Moylan III* mandate." *Id.* at 4. The court then applied the substantial benefit test and found that Richard had "undoubtedly conferred a 'substantial benefit' on the Wards" through his work on the house but that "since the Wards do not stand to recover any funds from Richard's litigation efforts" on the shareholder loans, no substantial benefit was conferred

for that issue.  *Id.* at 5-6.  The court then used the "lodestar" method to compute the fee award, multiplying what it found to be a reasonable hourly rate of $300 by the number of hours reasonably spent on the two issues which the court decided had conferred a substantial benefit on the Wards. *Id.* at 6-9.  Considering the entries Richard had submitted, the court identified four categories of work related to the two compensable issues (that is: the TCDs and the house).  *Id.* at 8.  Category One referred to work done solely on recovering the TCDs; Category Two referred to work done solely on the transfer of property to Lina; Category Three referred to general guardianship litigation; and Category Four referred to work which led to *Moylan II*.  *Id.*  The court awarded the amount requested for Categories One and Two, but it found that Categories Three and Four included both compensable issues and other issues and cut those hours in half.  *Id.* at 8-9.

[12]    Two days later, Richard moved for reconsideration.  He asserted that the former judge had ordered him to submit invoices for all issues for which he believed he had conferred a substantial benefit, but the judge had not specified that he required legal citation for those arguments.  Finally, Richard requested that the new judge issue a briefing schedule to address the other issues raised in her June 2021 Decision.[2]  Lina did not file an opposition, but in September 2021, the court denied the motion ("September 2021 Decision").  Clarifying that it had reviewed the recording from the relevant hearing, the court concluded that its June 2021 Decision was "consistent with [the former judge's] instruction to Richard."  RA, tab 739C at 2-3 (Dec. & Order, Sept. 2, 2021).  Judgment was entered on the docket, addressing both the June 2021 Decision on attorney's fees and the September 2021 Decision denying the motion for reconsideration.

---

[2] As directed in the June 2021 Decision, Richard also filed a position statement on when amounts due under the Decision should be paid.

**[13]**    Richard timely filed an appeal, and Lina timely filed a cross-appeal.[3]

**[14]**    Richard later moved to stay this court's briefing order "based upon the need for a transcript of the lower court's March 10, 2021 hearing." Mot. Stay Br. Schedule at 1 (Apr. 7, 2022). He argued that because of Lina's "challenge to the lower court's June 15, 2021 Decision in her opening brief . . . a transcript of the March 10, 2021 hearing should properly have been ordered by [Lina]." *Id.* at 1-2. He filed a disclosure to show that he had received the transcript under his own request with the Court Reporter's Unit of the Superior Court. Disclosure (Apr. 21, 2022). He amended his motion to request more time to file the response and reply brief and "for costs necessitated in preparing a transcript that [Lina] should have identified to support [her] appeal of the . . . June 15, 2021 decision." *Id.* at 2. Alternatively, Richard request that this court "award such costs upon considering [his] response and reply brief." *Id.* This court granted the request for more time but "reserve[d] on the request for costs at [that] time." Order at 2 (Apr. 25, 2022).

## II. JURISDICTION

**[15]**    This court has jurisdiction to hear appeals from orders in guardianship cases. "Guardianships, including those in Guam, do not lead to final judgments, but instead only a series of final appealable orders." *Moylan V*, 2018 Guam 21 ¶ 10; *see also Moylan III*, 2018 Guam 8 ¶ 9 (exercising jurisdiction over an order regarding attorney's fees in a guardianship proceeding); 7 GCA § 3107(b) (2005); 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-214 (2022)); 15 GCA § 4801 (2005) (allowing an appeal to the Supreme Court from an order "settling an account of a guardian").

---

[3] On November 22, 2021, Lina filed a Notice of Suggestion of Death indicating that Yuk Lan Moylan had passed on November 20, 2021. We ordered the parties to file responses on whether any issues in the case were mooted. Both parties argued that the case was not moot, and we agree.

## III. STANDARD OF REVIEW

[16] Interpretation of the Supreme Court's mandate is a question of law, reviewed *de novo*. *Town House Dep't Stores, Inc. v. Ahn*, 2003 Guam 6 ¶ 17; *Moylan II*, 2017 Guam 28 ¶ 26.

[17] Although determination of the legal basis for an award of attorney's fees is reviewed *de novo*, the trial court's award of attorney's fees is reviewed for an abuse of discretion. *Fleming v. Quigley*, 2003 Guam 4 ¶ 14; *Moylan III*, 2018 Guam 8 ¶ 10; *Cruz v. Cruz*, 2005 Guam 3 ¶ 8.

> This court has defined abuse of discretion as a trial court decision "exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." This court will not reverse a decision unless "it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant facts."

*Cruz*, 2005 Guam 3 ¶ 8 (first quoting *People v. Quinata*, 1999 Guam 6 ¶ 17; and then quoting *Guam Radio Servs., Inc. v. Guam Econ. Dev. Auth.*, 2000 Guam 23 ¶ 6).

## IV. ANALYSIS

### A. The June 2021 Decision Does Not Reflect a Fundamental Misapprehension or Warrant Remand; Excerpts of Record Not Part of the Record on Appeal Are Stricken

[18] Richard claims that the Superior Court's June 2021 Decision reflects a fundamental misapprehension of what the former judge ordered and what was submitted, represents a miscalculation of the attorney's fees, and warrants remand. *See* Appellant's Br. at 1 (Jan. 24, 2022). We disagree.

#### 1. The Superior Court did not fundamentally misunderstand what the former judge ordered and what Richard submitted

[19] Richard identifies two types of alleged misunderstanding: "(i) that the former Judge ordered all billings to be submitted and that Appellant did so, and (ii) that Appellant shall include legal briefing for why the categories claimed satisfy the Substantial Benefit Test." *Id.* at 9.

**[20]**    First, the new judge did not misapprehend what was submitted by Richard.  The court's June 2021 Decision on attorney's fees states:

> The time records do not segregate the time he expended on the litigation efforts that resulted in the return of the TCDs to the Wards or his efforts that resulted in the retention of the title to the residential property occupied by [Lina].  Instead, he provides the Court with a linear breakdown of *all fees and costs expended in all matters related to the Guardianship of Yuk Lan Moylan*.

RA, tab 731C at 8 (Dec. & Order, June 15, 2021) (emphasis added).[4]  But in context, this is imprecise drafting rather than a fundamental understanding.

**[21]**    Richard made clear that he did not submit *all* invoices but only those for which he argued he had provided substantial benefit to the Wards.  *See, e.g.*, RA, tab 694C at 2 (Reply to Opp'n to Legal Br. re Mandate, Nov. 18, 2020) ("The invoice identifies _only_ legal work identifying results that provided a substantial benefit . . . nothing more.").  The court noted as much in its denial of the motion for reconsideration.  *See* RA, tab 739C at 3 (Dec. & Order, Sept. 2, 2021) (noting that Richard had requested "to submit time entries for every instance where Richard has acted for the substantial benefit of the Wards"); *id.* at 2 (noting that Richard's first allegation of error was that "the Court misapprehended that the time entries that he submitted to the Court included work not done in substantial benefit to the Ward").

**[22]**    Richard also clarified that he had submitted invoices related to five issues, which the court acknowledged.  He sought to collect for his work to recover the $1.5 million in TCDs, to recover the house, to defend a former judge's determination that the Wards were entitled to recovery of a

---

[4] As Richard points out, the June 2021 Decision stated, "Because the recovery of the TCDs and the transfer of property only made up a portion of the issues covered in *Moylan I*, the Court finds it reasonable to reduce the hours by 50%."  Record on Appeal ("RA"), tab 731C at 9 (Dec. & Order, June 15, 2021); Appellant's Br. at 17-18 (Jan. 24, 2022).  The court cut what it termed Category Three in half.  Richard objected to this in in his motion for reconsideration.  The court specifically addressed the point in its September 2021 Decision denying the motion for reconsideration.  "For instance, the hours and description of the submissions the Court included in category three indicate that the work went towards different areas of litigation--not solely in effort to recover the TCDs, as Richard argues."  RA, tab 739C at 3 (Dec. & Order, Sept. 2, 2021).

loan, to protect the Wards' civil liberties, and to recover compensable fees and costs. The court recognized this, stating, "Richard indicated that the scope of fees and costs that he seeks to recover includes" these five issues. RA, tab 731C at 3 (Dec. & Order, June 15, 2021). The court awarded him attorney's fees for fewer than five issues and cut entries where he worked on things besides what the court determined were the compensable issues (that is: the TCDs and the house). *See id.* at 4-10. The court did not cut them because it thought Richard had submitted *all* invoices. The court cut them because he had submitted invoices for five issues without specifying which work was done for which issue; where an entry covered work that was both recoverable and non-recoverable under the court's decision to award fees for only two of the five issues, the court cut the billing. Richard's statement that "the House, Corp. loan and other categories were clearly identified in each entry billing" is undermined by the lack of specificity in the chart he submitted. *See* Appellant's Br. at 13, 20-21 (asserting that the "line item hours Appellant produced had already been distilled and separated" for each issue). He included detailed captions, but the court was left to parse through which entry related to which issue. RA, tab 739C at 3 (Dec. & Order, Sept. 2, 2021) ("Despite [the former judge's] instruction, however, Richard failed to adequately differentiate which work applied to which litigation effort.").

[23]     Richard argued below that there were five issues for which he conferred a substantial benefit to the Wards. He submitted a lengthy chart including entries only for those items for which he believed he had conferred a substantial benefit, not all legal work performed. While his chart provided detailed descriptions, it did not specify which entry was related to which issue (although he seeks to add color-coding to that effect now, on appeal). *See* Appellant's Br. at 6-8; Excerpts of Record ("ER") at 233-315 (Appellant's Summ.). The Superior Court, aware that it was looking at invoices for five issues but also aware that it was awarding fees on only two of the issues,

reviewed the chart. The court's "Category One" and "Category Two" (awarded fully) reflected entries the court found aligned with the two issues on which it was awarding fees (the TCDs and the house). The court's "Category Three" and "Category Four" reflected entries involving work on some of the other three (non-recoverable) issues along with two recoverable issues, and so the court cut Categories Three and Four in half. The court's process was neither unreasonable nor an abuse of discretion under the circumstances, even if Richard now provides additional information about how he would have preferred for the court to review the chart.

[24]    Second, the Superior Court did not misunderstand whether the former judge ordered Richard to provide legal arguments to support his other claims.

[25]    Richard argues that the former judge "did not specify if any legal authority needed to be provided . . . presumably because the legal test was already provided by the mandate (Substantial Benefit Test)." Appellant's Br. at 13. This is belied by the record. The former judge said that he would allow Richard to "argue" that he could recover fees under the substantial benefit doctrine for issues beyond the TCDs and the house. Transcript ("Tr.") at 7-9 (Status Conf. & Ex Parte Appl. Hr'g, June 4, 2019). "Arguing" would suggest a requirement for legal analysis.

[26]    And again, contrary to his assertions, although all entities seemed to agree that the only mechanism available for fee shifting would be the substantial benefit doctrine, Richard's submissions do not adequately discuss how the substantial benefit doctrine applied to the categories listed. He provided some sporadic citations, and so it may overstate the matter to say he "faile[ed] to present the Court with a legal argument regarding the award of attorney fees for these issues." RA, tab 731C at 4 (Dec. & Order, June 15, 2021); *see also, e.g.*, RA, tab 660C at 3 (Br. re Mandate, Dec. 2, 2019) (citing *Moylan III*, 2018 Guam 21 ¶ 13, as "recognition of [the] importance [of] civil rights for wards at stake in guardianship hearings" and noting a California

case without explanation); RA, tab 694C at 5 (Reply to Opp'n to Legal Br re Mandate) (urging that appeal of *Moylan I*, 2011 Guam 16, "resulted in a substantial benefit to Francis and Yuk Lan's estate and property ownership in numerous respects"); *id.* at 6 (suggesting that *Moylan III*, 2018 Guam 8, "was a substantial benefit to the Wards since it created the mechanism allowing Richard to continue his efforts to protect Yuk Lan" and noting that "[t]he record reflects the numerous instances where Yuk Lan's financial and civil rights have been protected, which constitutes a '*substantial benefit*' to her"); *id.* at 7 (noting that appeal of CVA17-020, which resulted in *Moylan V*, 2018 Guam 21, "was important in showing that a 'substantial benefit' was not just for Yuk Lan's property rights, but also how important protecting her civil rights and liberties are, including to proper notice when her competency was in jeopardy").

[27]     But it is not the case that the former judge did not require legal argument or that Richard had provided robust analysis. Again, this was discussed in the motion for reconsideration, which the court denied after specifically repeating that Richard had "failed to present a legal argument for recovering under the substantial benefit doctrine" on these issues. RA, tab 739C at 3 (Dec. & Order, Sept. 2, 2021). Legal analysis was required; Richard provided some analysis, but the court found it insufficient.

[28]     The submissions and transcripts in the record suggest there was at first confusion as to what the former judge ordered and what Richard submitted. But the record suggests that the court understood the situation before issuing its Judgment. First, the court conducted the March 10, 2021 hearing to receive information from the parties beyond what was submitted in the briefing ordered by the former judge.[5] Second, the court requested an Excel copy of Richard's invoice to review it in depth before issuing its decision. Third, the court wrote a detailed Decision and Order

---

[5] As Richard points out, however, although Judge Iriarte already had his submission at the hearing she did not specify any issues with the information presented. Appellant's Reply Br. at 11-12 (May 20, 2022).

explaining its reasoning and process. RA, tab 731C (Dec. & Order, June 15, 2021). Fourth, and most critically, following Richard's motion for reconsideration, the court "review[ed] . . . the court recording from [the former judge's] June 4, 2019 hearing." RA, tab 739C at 2 (Dec. & Order, Sept. 2, 2021). The court's September 2021 Decision denying Richard's motion for reconsideration summarized what the former judge had orally ordered, identified a slight discrepancy between the court's June 2021 Decision and the former judge's verbal instructions, found that the discrepancy was ultimately without consequence because the same result was reached, analyzed the rest of the June 2021 Decision for consistency with the former judge's instructions, and found that the court had "adequately considered all material facts." *Id.* at 2-4. Richard argues that the court misapprehended what the former judge ordered and what Richard submitted. To the contrary, the court went to some length to make sure it understood before issuing its Judgment.

[29]    Neither the process nor the outcome of the Superior Court's June 2021 and September 2021 Decisions reflects an abuse of discretion under these circumstances.

### 2. Excerpts of Record not properly part of the record on appeal are stricken; no other claims qualify under the substantial benefit test

[30]    Richard also urges that additional claims qualify under the substantial benefit test because, he says, errors occurred in the calculations. Appellant's Br. at 17-21. He suggests again that the June 2021 Decision assumes the billings submitted were for all work performed and that it also miscalculates the hours for the TCD life savings and house return.

[31]    As for Richard's first point, the Superior Court did not misunderstand the scope of work submitted. Richard's second argument is that "the hours were undercalculated for the TCD life savings return and over-calculated for the house return." *Id.* at 19. At the outset, we repeat that

"[i]t is not this court's place to crunch numbers and order the trial court to provide a detailed calculation." *Cruz*, 2005 Guam 3 ¶ 15.

[32]    Here that is especially true. Richard references a chart included with his appellate materials that applies color-coding to the chart of invoices submitted to the Superior Court to help link individual entries with categories of work. *See* Appellant's Br. at 6-8; ER at 233-315 (Appellant's Summ.). Lina "moves to strike the 'color-coded' statements inappropriately submitted by Richard in the Excerpts of Record," urging that pages 233 to 315 of the excerpts violate Guam Rule of Appellate Procedure ("GRAP") 7(a), which specifies the composition of the record on appeal. Appellee's Br. at 14 (Apr. 6, 2022); Appellee's Reply Br. at 8 n.1 (June 10, 2022). She points out that GRAP 15(i) states that irrelevant materials may be stricken from the Excerpts of Record. Appellee's Br. at 14. As this court has recognized:

> Rule 7(a) is substantially similar to Rule 10(a) of the Federal Rules of Appellate Procedure ("FRAP"). The purpose of the rule is to limit the record to what was before the district court. This rule complements the "basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court."

*Sharrock v. McCoy*, 2016 Guam 7 ¶ 57 (internal citations omitted); *see also Melwani v. Arnold*, 2010 Guam 7 ¶ 24 n.6 (declining to consider document not properly part of excerpts of record). Lina cites *Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002), to urge that "all portions of the brief relying upon a stricken document should be stricken, as not properly before the court." Appellee's Br. at 15.

[33]    We agree and strike pages 233 to 315 of the Excerpts of Record and disregard the parts of Appellant's Brief that rely on them. *See Sharrock*, 2016 Guam 7 ¶ 114 (striking parts of brief and excerpts of record where not part of record on appeal). This is important where Richard urges that the Superior Court misunderstood him, but the Superior Court specifically stated that "[d]espite

[the former judge's] instruction, . . . Richard failed to adequately differentiate which work applied to which litigation effort." RA, tab 739C at 3 (Dec. & Order, Sept. 2, 2021). Richard appears to do now what he was faulted for failing to do below. Although he urges that his new color-coding represented merely a "*reformatted* summar[y]" and that the pages are "undisputedly part of the record and used by the trial court in its decision," Appellant's Reply Br. at 1 (May 20, 2022), we are not persuaded.

[34] Lina urges it is within this court's discretion to impose sanctions under GRAP 15(i). Appellee's Br. at 15-16; *see also* GRAP 15(i)(1)(D) (permitting the court to impose monetary sanctions if "irrelevant materials are included" in the excerpts of record). In *Sharrock*, we said that monetary sanctions for GRAP 7(a) violations were reserved "for those instances where there has been 'blatant disregard of the rules and regulations which permit the judicial machinery to function smoothly.'" *Sharrock*, 2016 Guam 7 ¶ 72 (quoting *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1128 (2d. Cir. 1989)). We decline to impose sanctions.

### 3. The Superior Court did not err in determining the legal basis for the award of attorney's fees; the June 2021 Decision is in accordance with the mandate and opinion in *Moylan III*

[35] The legal basis for an award of attorney's fees is reviewed *de novo*. *Fleming*, 2003 Guam 4 ¶ 14. Richard requested fees for five types of legal work. The Superior Court awarded the fees on only two of the issues, the TCDs and the house. Neither party appeals the court's decision to award Richard fees on those two issues. This court's review of the basis for denial of the other three issues is *de novo*. *Id.*

[36] The Superior Court denied Richard's request for attorney's fees for his work on the shareholder loans. The court noted that *Moylan II* held it would be futile to decide the loan issue and highlighted that the part of the Findings of Fact that found that the corporation owed the Wards

almost $2 million was effectively vacated. For that reason, the Superior Court said that "since the Wards do not stand to recover any funds from Richard's litigation efforts, the Court does not find that the efforts on the loans conferred a 'substantial benefit' on the Wards." RA, tab 731C at 6 (Dec. & Order, June 15, 2021). We find no error in this.

[37]    As for Richard's effort to protect the Wards' civil liberties, the Superior Court said that he "fail[ed] to present the Court with a legal argument regarding the award of attorney fees for these issues." *Id.* at 4. Likewise, for his "efforts to recover compensable fees and costs," the court determined that "he fail[ed] to present to the Court a legal argument as to why it should award him attorney fees." *Id.* The Superior Court declined to consider these issues. We agree that his legal arguments on these subjects were deficient. Even if the *mechanism* for fee shifting, the substantial benefit test, had been established in *Moylan III*, absent argument applying this test to his activities, we find no error in the Superior Court's decision.

[38]    We also confirm that the Superior Court's June 2021 Decision complies with our mandate in *Moylan III*, a question which is also reviewed *de novo*. *Moylan II*, 2017 Guam 28 ¶ 26. *Moylan III* concluded:

> For the reasons discussed above, we **VACATE** that portion of the trial court's July 26, 2016 Decision and Order to the extent that it resolved Richard's claim for attorney's fees based upon litigation that was the subject of the court's opinion in *Moylan II*, 2017 Guam 28. We **REMAND** those issues and direct the Superior Court to dismiss that portion of Richard's motion without prejudice or, upon final resolution of those issues, determine whether Richard is entitled to attorney's fees in accordance with the legal principles enunciated by the court in this Opinion. Additionally, we **REVERSE** that portion of the trial court's July 26, 2016 Decision and Order regarding the payment of attorney's fees for Richard's litigation efforts that resulted in the return of the TCDs to the Wards and **REMAND** the matter to the Superior Court so that it may calculate the appropriate amount of attorney's fees in the first instance.

*Moylan III*, 2018 Guam 8 ¶ 33. The Superior Court here calculated the fees to be awarded for the TCDs and determined whether Richard was entitled to fees for his work on the house and the

shareholder loans. Although *Moylan III* established "that the 'substantial benefit' exception to the American Rule applies in Guam and may be applied in the context of guardianship proceedings," it did not direct the trial court to apply or even consider the exception beyond the three issues noted above. *See id.* ¶ 29; RA, tab 731C at 6 (Dec. & Order, June 15, 2021) (noting that efforts to recover compensable fees and costs "also fall[] outside the scope of the *Moylan III* mandate").

[39]    The Superior Court's June 2021 Decision is in accordance with both the mandate and Opinion of *Moylan III*.

## B.  The $300 Rate Was Not Unreasonable under these Circumstances

[40]    Lina's cross-appeal urges that the $300 hourly rate granted by the Superior Court was unjust enrichment because it was a windfall in violation of the substantial benefit doctrine. Appellee's Br. at 13. She also urges that use of a lodestar figure, although presumptively reasonable, was rebutted by a billable rate. *Id.* Both arguments fail.

[41]    Lina first asserts that "[t]he trial court's order granting attorney's fees at the $300.00 hourly rate was erroneous when applying the principles directed by *Moylan III*." *Id.* at 20-21. This is because, although he requested recovery at $300 per hour from the court, "Richard's attorney submitted his billings and declaration which reflect[ed] an hourly rate of $250.00 per hour . . . ." *Id.* at 20. She further contends that "[w]here the record supports a billable rate of $250.00, an award of attorney's fees in excess of the billed rate . . . is not only erroneous, but results in unjust enrichment and a punitive damage against the Wards . . . ." *Id.* at 21.

[42]    Lina then argues that although the lodestar figure ("number of hours reasonably expended on litigation multiplied by the hourly rate") is presumptively reasonable under *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the presumption may be rebutted by substantial evidence. Appellee's Br. at 23. Here, she says, the "admission, concession and clearly identified billable

rate of $250.00 per hour" rebutted the "Lodestar Figure reasonable amount of $300.00." *Id.* She argues that although the Superior Court had discretion to calculate the amount, "upon rebutta[l] of the presumptively reasonable fee, the trial court abused its discretion in not conducting a reasonableness analysis notwithstanding the principles of fee-shifting set forth in *Moylan III*." *Id.* at 23-24.

[43]    Contrary to Lina's arguments, however, here we are looking for a "reasonable" award, not an award that mirrors any amount billed to Richard. In *Moylan III*, we specifically allowed the shifting of "reasonable attorney's fees expended by Richard in his effort to have the TCDs returned." 2018 Guam 8 ¶ 31. When reviewing an award of "reasonable attorney's fees," fidelity to the exact amount billed is not required.

[44]    In *Cruz v. Cruz*, the defendant appealed from an order directing him to pay approximately $9,000 "in reasonable attorney's fees." 2005 Guam 3 ¶ 1. There, the plaintiff had submitted invoices for fees owed to her attorney and evidence that she had made a payment, creating an outstanding balance of more than $20,000. *Id.* ¶ 4. "The trial court granted [plaintiff] $8,837.21 in reasonable attorney's fees to compensate her for expenses she actually incurred and which remained due and owing." *Id.* ¶ 5. In that process, the trial court considered various factors, including payments made, the balance of equities of the parties, and the financial abilities of the parties post divorce. *Id.* Although "both parties disagree[d] as to how the trial court derived the exact amount . . . in applying the abuse of discretion standard, it d[id] not appear that the trial court ordered an unreasonable amount given the facts and circumstances of the case." *Id.* ¶¶ 10, 15. We found that the trial court did not abuse its discretion in awarding nearly $9,000 "where its decision was justified by the evidence and reached . . . by weighing relevant facts." *Id.* ¶ 16.

**[45]** Likewise, here, we do not find the $300 rate unreasonable. First, although Richard's submissions mentioned both a $250- and $300-per-hour rate, when directly asked by the Superior Court, he abandoned the request for $250 per hour and adopted the request for $300 per hour at the March 10, 2021 hearing. *See* Tr. at 26-27 (SP0110-07) (Hr'g Re: Att'y's Fees, Mar. 10, 2021).

**[46]** Second, the Superior Court conducted a reasonableness analysis and provided clear reasoning for its decision to award $300:

> Attorney Moylan seeks approval for an hourly rate of $300. In determining a *reasonable hourly rate*, courts look to the prevailing rate in the community. *Blum v. Stenson*, 465 U.S. 886, 895 n.1 (1984). A $300 hourly rate is not uncommon in Guam. *See, e.g.*, *Gange v. Gov't of Guam*, CV1461-10 (Dec. & Order at 19 (July 22, 2015) (approving a $300 hourly rate)); *Palmer v. Mariana Stones Corp.*, CV0709-13 (Dec. & Order (Dec. 17, 2018) (approving hourly rates between $200 and $400)).
>
> The Court agrees with Attorney Moylan that the work for these cases has been complex. The issues have been wide-ranging and of first impression for the Guam courts. It also agrees that the $300 hourly rate is comparable to the rate utilized by the ward's Guardian Ad Litem and community rates. The Court therefore approves Attorney Moylan's requested hourly rate of $300.

RA, tab 731C at 7 (Dec. & Order, June 15, 2021).

**[47]** We are unpersuaded by Lina's arguments that more analysis was required or that this decision was unreasonable. This award was not "clearly against the logic and effect of the facts" or a "clear error of judgment." *Cruz*, 2005 Guam 3 ¶ 8**.**

## C. The Parties Will Share the Cost of Transcripts for the March 10, 2021 Hearing, but Each Side Will Bear Its Own Attorney's Fees

**[48]** Richard moved to stay this court's briefing order "based upon the need for a transcript of the lower court's March 10, 2021 hearing." Mot. Stay Br. Schedule at 1 (Apr. 7, 2022). Richard argued that based on Lina's "challenge to the lower court's June 15, 2021 Decision in her opening brief . . . a transcript of the March 10, 2021 hearing should properly have been ordered by [Lina]" and that the failure of Lina to do so had prejudiced Richard. *Id.* at 1-2. He filed a disclosure to

show that he had received the transcript under his own request with the Court Reporter's Unit of the Superior Court. Disclosure (Apr. 21, 2022). He amended his motion to request more time to file the response and reply brief and "for costs necessitated in preparing a transcript [Lina] should have identified to support [Lina's] appeal of the lower court's June 15, 2021 decision. Alternatively, that the High Court award such costs upon considering [Richard's] response and reply brief." *Id.* at 2. This court granted the request for more time but "reserve[d] on the request for costs at [that] time." Order at 2 (Apr. 25, 2022). In his reply brief, Richard repeated his request for "reimbursement of [his] costs and reasonable fees in having to defend against this argument." Appellant's Reply Br. at 16.

[49]    For her part, Lina did not file any separate submission on Richard's original request. However, in her reply brief, she opposed Richard's request "on the basis that no transcripts were necessary to this appeal." Appellee's Reply Br. at 6-7. She asserts that GRAP 7(b)(2) requires an appellant to order transcripts where the appellant argues that the finding is unsupported by the evidence. *Id.* at 7. She urges that her position is not that the trial court ruling is unsupported by evidence, rather that the appeal presents a "purely legal issue not dependent on any factual determination by the trial court." *Id.* at 7.

[50]    Because we find that the content of the March 10, 2021 hearing was relevant to arguments raised by both sides, the parties will evenly split the cost of those transcripts. But each side will bear its own attorney's fees and costs on this issue.

//

//

//

//

## V.  CONCLUSION

**[51]**    The Judgment of the Superior Court is **AFFIRMED**.  The parties will evenly split the cost of the transcripts for the March 10, 2021 hearing, but each side will bear its own attorney's fees and costs for that issue.

/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice

/s/
F. PHILIP CARBULLIDO
Chief Justice